May it please the Court, my name is Michael Aschenbrenner, and I represent the appellant, Melissa Earll, in this matter. I wish to reserve two minutes for rebuttal. I ask that this Court reverse the trial court and make three holdings. One, that Title III of the Americans with Disabilities Act applies to Internet-only businesses. Two, that the rather than structural impediments. And three, that the California Unruh Civil Rights Act either does not require allegations of intent or, alternatively, that appellant plausibly alleged intent sufficient to survive a motion to dismiss. Turning first to the ADA. In 2012, the Department of Justice, which is tasked by Congress with in the case, National Association of the Deaf v. Netflix. And that is instructive here and, in fact, is positive of the ADA question before the Court today. In that statement of interest, the Department of Justice stated that Title III applies to Web-only businesses, that Web-only businesses Do you have any authority for the idea that we need to give Chevron deference to a statement of interest? Yes, Your Honor. The deference standard is actually under Auer v. Robbins, the Supreme Court case, as recognized by this Court in MR v. Dreyfus. So what regulation were they interpreting if you say that Auer deference is what applies? The implementing regulation for the ADA. And which implementing regulation were they interpreting? Can you explain what you mean and how the statement of interest referenced that regulation? Yes, Your Honor. The — I don't recall the CFR title number, but the — there's a voluminous record under the CFR for implementing the ADA. And the Court — the Department of Justice in the Netflix case was referring to the elements and the parts of the CFR covering places of public accommodation. And did the agency say, we are interpreting this regulation to mean that the Internet is covered by the ADA? Yes, Your Honor. Where did they say that? You need to cite that for us, please, if you have that, because we — I didn't see it in the record. I would be happy to look up the page number of the statement of interest and provide that to court upon rebuttal. I mean — That's a pretty key provision, so if you have it. It's a case where we've been quite clear about, you know, what a place of accommodation is. And so, you know, in some ways, I think you're asking us to overrule that case, which we don't have the authority to do. Your Honor, to that point, I submit that the Court does have the authority to do that and that an en banc panel is not required. And the reason for that is that Supreme Court precedent since this Court decided WIRE has so undermined the reasoning in WIRE that this Court should no longer follow it. To back that up, I submit the case of Specter v. Norwegian Cruise Lines from 2005, in which the Supreme Court held that Title III of the ADA applies to foreign flag cruise ships while traversing American waters. Was this case in your brief?  I remember that case, but that wouldn't — that wouldn't lead me to the conclusion that a website would qualify. How? I mean, how would that — how would that case help you, even? Happy to answer that, Your Honors. The reason that case helps appellant in this case is because most — or much, rather, of eBay's argument regarding why Title III does not apply is because it's not defined in the ADA. And eBay defines the term, much as this Court did in WIRE, as a specific locality, a building, a location. And a ship is not a specific locality. Yeah, but I think we'd be a far stretch. I remember that case from the Supreme Court as determining the applicability of the ADA. But I think we could not, as a panel, at least in my view, jump from WIRE to a ship qualifying, even though it doesn't have a fixed location as a place, on the high seas, to the fact that the Internet is a place. Right. I mean, because WIRE said that a — that you need a physical place. A ship is a physical place, a lot more than the Internet. So how would we say that's irreconcilable anyway? Your Honor, you're correct that ships are physical. But they are not places, as defined by eBay or this Court in WIRE, because they are not fixed locations. In fact, the Supreme Court was careful to say that ships are covered not as modes of transportation under Section 12184, but as places of public accommodation. And so the underpinning of the WIRE decision — in fact, the Court — this Court stated in WIRE that all the items on the list have something in common. They are actual physical places. Very true that they are physical, but they are not places. And if I may, Your Honor, look to the language of the Specter decision, which really bolsters this argument, where the Court said that to hold there is no Title III protection for disabled persons who seek to use the amenities of foreign cruise ships would be a harsh and unexpected interpretation of a statute designed to provide broad protection for the disabled. And in support of that holding, the Supreme Court cited the fact that over 7 million persons per year in the United States take foreign cruise ships. Well, I just think you're — I think you're going down a path that we don't have any leeway or discretion over. I don't think we can jump from — I don't think we can waive this. Yeah. Not in your brief either. It's not there. Which brings me to my second point, and that's about the DPA claim. I understand your argument is that you have a freestanding. It's freestanding, correct? That's right, Your Honor. And you want us to overrule our past — the past precedent that says it's you — it's not a freestanding claim unless it's linked to a policy? I don't believe any overruling is necessary. As the California Court of Appeals stated in Hankins v. El Torito Restaurants, in sum, we hold that Sections 54.1 apply to policies as well as structural impediments. So on that point, I didn't see that argued until your reply brief. So maybe you could point me where in your opening brief you made the argument you're making now, which is that there's — that the policy carve-out saves your DPA claim. Well, what I can point to, Your Honor, is eBay's brief, which relied in large part on the Marsh case. No, but I'm asking — because you're the appellant, I'm asking where now in your brief? Your Honor, correct me if I'm mistaken, but I believe I'm allowed in my reply brief to respond to eBay's argument. You can respond, but you need to make the argument as to what — I mean, if you don't have a DPA claim as pled, alleged and appealed, then simply responding to an argument by them doesn't save you procedurally. So I'm still looking — am I correct that you didn't argue it in your opening brief? In the issues presented in the opening brief, number three is whether the district court erred in concluding that the California Disabled Persons Act is not a freestanding statute. Right. And you argued that it is not, but even if it is, your DPA claim relied on the ADA or the UNRRA Act for the standards. You never said it relies on a policy and a policy is enough. Not until your reply. Right. But eBay relied on Marsh, and the El Torito case, Hankins v. El Torito, specifically references Marsh. So I believe the argument in the reply brief is appropriate as it relates specifically to a case referenced by eBay. But all of a sudden now you're saying our DPA claim is based on a policy, not based on what we said in our opening brief, which was that it's the UNRRA Act or the ADA. Well, that would be for the ADA. That's a dependent claim. And that was in response to the district court's ruling that the district court ruled, of course, that the DPA is not a freestanding statute. Right. So in response to the district court, why didn't you say the district court's wrong because El Torito, we're relying on a policy? Your Honors, it's before the court in the reply brief and a proper argument in response to eBay's argument. So even on the merits, even on the merits, isn't the El Torito case about a policy that is interfering with the implementation of otherwise applicable standards? It's not just a policy. It was the accessibility standards and then the policy was even though we're complying with the physical, physically with the standards, this policy is interfering. How does that get us to a policy by itself is enough even when there are no physical standards? Because of what the court stated specifically in its holding and the rationale underlying it in the Ankins case, when the court stated that the statute is violated by policies not otherwise compelled by law, which deny disabled individuals full and fair access to public accommodations. Right. But the denying the full and fair access is – talks about what they were talking about earlier in the opinion, which is that there are these standards and they physically complied with the standards, but then there's a policy that says you can't use the bathroom anyway or whatever it was. And the court specifically addressed that argument, Your Honor, or that position, when it said that the – any such rule and the reasoning that may sustain it is inopposite when the basis of such a claim is the policy of a proprietor rather than the design of the accommodations, thus Marsh and cases following it are irrelevant to the issues we address. So respectfully in the words of the California Court of Appeals, it is found that that issue is irrelevant to the question of whether a policy itself can sustain a claim under the DPA. So you concede that eBay's oral identification system is not a policy? It is a policy, Your Honor. Oh, I thought you were just saying right now it doesn't need to be a policy. The argument is that it is a policy rather than a physical or structural access impediment. And your basis for that is this El Torito case? That's right, Your Honor. Okay. And the facts in the record that what's at issue, the facts in this case, that what's at issue is not whether Appellant was able to physically access an eBay facility, but rather eBay's policies as applied to her. Did you argue that in any way in the district court? Which point, Your Honor? Policy issue. Yes. Yes, Your Honor. In fact, to that point, which can lead us into the UNRWA Act but applies to the What's at issue? When you say yes, where did you argue? It is on page 5 of the record when, make sure of that, Your Honors. Yes, in paragraph 24 on page 5 of the record. The policy at issue there is eBay's policy where it told Appellant that she should have a hearing person. Right. But where did you argue that a policy could support your DPA claim? I mean, you factually maybe alleged they had a policy, but where did you say that that's enough legally to support a claim? That would be in the oppositions to the motions to dismiss, both for the, well, probably in the First Amendment complaint specifically, as the DPA was not a There you just argued that the ADA and the UNRWA Act provided the necessary standards, didn't you? I didn't see anything about a policy as enough. Can you point us to somewhere where you argued that a policy was enough? I believe I can, Your Honor. Well, Your Honor, per circuit court rule, the briefs are not proper parts of But they matter if we're talking about waiver. Yeah. They're part of the record. I mean, you might not have to supply them, but they're completely part of the record because that's in the appeal. Everything is part of the record. Obviously, excerpts point us to certain places. Did you want to reserve some time for rebuttal because you're down to two minutes? Yes. I reserved two minutes, Your Honor. Thank you very much. Good morning. Thank you, Your Honor. May it please the Court, I'm David Salmons on behalf of eBay. I'd like to make a few points about the ADA and then I'll turn to the state law claims under the DPA and the UNRWA Act. First, there are three reasons why we believe this panel has to affirm the district court's dismissal of the ADA claim. First, the wireline of cases, as this Court's questions, I believe, indicate, are binding on point and clear precedents that establish that the phrase places of public accommodation, as used in Title III of the ADA, refers to actual physical places only and thus does not apply to the website of a web-only business like eBay. WIRE's interpretation of that key statutory phrase is authoritative and binding. It's been treated as binding by subsequent panels of this Court and by the district courts and that authoritative construction doesn't change whether the non-physical space at issue is an insurance policy, a video game, or a website. In all events, the law of this circuit is clear that only actual physical spaces open to the public are covered by Title III. WIRE also has the benefit of being correct. It's consistent with the plain language of the statute and with the longstanding understanding of what places of public accommodation means at common law and under other civil rights statutes. It's just always been true that if you open, as a business, you open physical spaces and invite the public in, you have extra duties of care and non-discrimination that do not apply to other businesses. What about the U.S. District Court for the District of Massachusetts? What do we do with, I mean, it seems like their analysis is persuasive and they ultimately held that the ADA does apply to websites. Does that, should that not influence our decision? Well, I don't think it can, Your Honor, because WIRE is, in fact, binding. But I would suggest that its reasoning is, in fact, not persuasive. It relies on the prior First Circuit holding in car parts. And if you look at the reasoning of that case, first, it's very policy-driven as opposed to based on the text of the statute. To the extent it focuses on the text, it takes the phrase from subparagraph F. In fact, I don't know if Your Honors have the briefs up there, but if you look at page two and three of eBay's brief, you have all the language of the statutes reproduced. What the First Circuit has done is they've taken the phrase travel services from subparagraph F and they've just sort of said, in the abstract, travel services don't have to be a real physical space. You can provide travel services over the phone or some other way. Therefore, the list of public accommodations here are not limited to actual physical places. The problem with that, if you actually look at the list in context, subparagraph F refers to a laundromat, a dry cleaner, a bank, a barbershop, a beauty shop, a travel service, a shoe repair service, which is the same phrase as travel service, same formulation. Funeral parlor, gas stations, office of an accountant, and so on. They're all real physical places. And so I think the analysis just simply fails on its face. In addition, while wire relied on the definition of public accommodation and that's sufficient to reach the conclusion that plain language here only applies to actual physical spaces, you also have to remember there's the word place there. It's not just discrimination by public accommodations, but it's discrimination by places of public accommodation. I think it's the Seventh Circuit that actually used the word website. Correct? It did in dicta in a decision that other courts have pointed to as being dicta. And, again, we think it's very poorly reasoned. If you compare that, those reasons of those... Well, isn't the day going to come where this issue is presented squarely without any procedural warts and there's going to be a direct determination as to whether a website would qualify under Title III? Yes. I think there will. I think, you know, our view is this case, you know, provides that opportunity although the panel is bound by the prior circuit law. We think the circuit law is correct. One thing I would just add, just so the Court understands, is the context here, the history of this phrase, places of public accommodation. This is not a novel construction for the ADA. You don't have to look further than this Court's own decision in the Clegg case, which is cited in our briefs, that involves Title II of the Civil Rights Act of 1964. That was a case that alleged racial and religious discrimination by a membership organization. And what this Court held about the, again, very same language, places of public accommodation at issue in Title II of the Civil Rights Act, the Court said, quote, when the organization is unconnected to entry into a public place or facility, the plain language of Title II makes the statute inapplicable. We think we win on the merits without any procedural hiccups or anything else, but again, this Court is bound by its law. The last thing I would say about that, Your Honor, is that we can trust that Congress is on top of this. If you look, you know, Congress has been monitoring the issues of accessibility in new technology and new media. It recently passed the 21st Century Telecommunications, excuse me, Telecommunications and Video Accessibility Act, where it addresses many of these issues. And what Congress does is it makes legislative fact findings. It weighs. And so does DOJ. It monitors it, too, and it's been taking the position that the ADA applies to websites. Well, yes and no, Your Honor. And let me be clear. Our argument is not that websites aren't covered because they didn't exist in 1990. Our argument is not that no website is covered by the ADA. Our argument is that if you only have a website of a web-only business, the website is not a place of public accommodation. And I would point the Court, just to be clear about this, if you look at the advance notice of proposed rulemaking that is relied upon so much by the other side, it is not as clear as they suggest. What the concluding statements of that notice state is that the Department is proposing, excuse me, I lost my spot, the Department is proposing to amend its Title III regulation to expressly address the obligations of public accommodations to make the websites they use to provide their goods and services to the public accessible to and usable by individuals with disabilities. They're referring to the websites of public accommodations. They're not necessarily saying that a website is a place of public accommodation. The DOJ has taken that position in a couple of briefs and, in fact, the one brief from the District Court of Massachusetts was relied upon heavily. Let me just quote what the brief actually says. And this is on page 9 of that brief. It says, the Department's ongoing regulatory developments support that Netflix is a public accommodation subject to Title III of the ADA. I'm not exactly sure what ongoing regulatory developments are that can be relied upon and given Chevron deference. That's a novel concept. It clearly is not applying the regulations that are currently in existence. In fact, this Court, again, in the Stern v. Sony case, in applying wire to video games, said that the existing regulations fully support the wire's construction. So your position is, if there's a physical place, the Hilton Hotels International, and the physical place has a website, that that might be covered by the ADA, the website included, but not if you are an Internet-only business? Is that your position? Your Honor, yes. In fact, the way I would answer the question, and again, I would direct you to the language that we reprinted on page 3 of the relevant provision of the ADA. The statutory question that's presented by this case is whether a website is a place of public accommodation. That answer is clearly no under wire. But there would be a different question you'd have to answer if you were dealing with a place of public accommodation already, and that question would be, is their website, you know, a service, privilege, or advantage of the place of public accommodation that's being offered to the public? If the answer to that is yes, then it very well could be covered under the ADA, perfectly consistent with our reading. Then we'd still have to figure out whether a brief is something we need to give deference to, and I mean, there'd be a lot of other questions even then, right? Whether these statements are actually regulations that deserve Chevron deference, or whether any of the... Yeah, I don't think there's really much dispute that none of the kinds of statements we're talking about here are entitled to that kind of deference. The other point I would just make about Chevron deference, Your Honor, and this, I think, just puts the nail in the coffin of this argument, and that is that you cannot read the wire line of cases any way except that it's providing the authoritative construction of that language. In administrative law terms, that's a Chevron step one analysis. This is what the language means. And the Supreme Court made clear in its Brand X case that when you have that kind of construction of statutory language, even if you had formal regulations that were entitled to notice and comment and followed all that process, they can't overturn the court's Chevron step one interpretation that preexists. And here we are way, way far away from that. So I think all of that administrative discussion is sort of a side issue because it's an authoritative construction of the language, and it's binding. Well, we don't, I mean... You don't have to get into any of that. We're really not in that situation anyway, but we don't really know that wire thought this was so clear that this was the only interpretation or whether they thought there was ambiguity and they were, I mean, that seems like a very, very strong statement about what wire was doing. Well, Your Honor, I agree that you don't have to get anywhere far down, this far down the road. I just was trying to answer the questions that if you were going down this road, I think we still win. What? But I do think that it's applying Chevron step one canons of construction, and it's saying what the statute requires. And if you look at the way it's been characterized in the Chabner case and in the Sony case as, you know, this is what this language requires, it also cites clearly plain language interpretations from the Third and Sixth Circuits. So I do think that's the best reading of that case. I'm happy to turn to the DPA. What about the DPA? Yes, Your Honor. So this Court is, Your Honors are well aware, in the CNN case certified to the California Supreme Court, this question of whether the DPA applies to websites. We submit there's two reasons why you don't need to worry about certifying in this case. Well, the certification in that case has now been dismissed. Correct. Yes. There is no longer a website issue certified to the California Supreme Court, although it did accept certification. Yes, Your Honor. And then the case settled. That's correct. Do we certify this one? That's what I'm saying. You don't need to certify in this case because the question as to whether it applies to websites, you don't have to reach. Remember, the district court below stated that it applies to websites, but still nonetheless dismissed because they can't point to any substantive accessibility standards that would apply to websites. And the line of cases that we rely on, I really think you can't be questioned at this point. And that issue hadn't been argued in the earlier case where the issue was certified, right? You've made an additional argument that wasn't made in the greater L.A. case. That's absolutely right. So that issue was not in play in CNN, and I would just point out that there's a reason for that, right? Because their primary argument was federal preemption. And it may be a little difficult, although perhaps there's a way to do it, to maintain that federal law occupies the field and preempts state law but doesn't provide any standards that the DPA could enforce. So that issue wasn't there, but it is here. The other issue that's here now that we think would allow the court just to go on the DPA grounds without a certification that wasn't in CNN is the ADA question itself. That issue was not there, so the court didn't have to inquire into what places of public accommodation means. In truth, we believe it's clear that the two statutes, the language is similar enough. There's no special definition of place in either one. You have to look to the ordinary meaning of the phrase, whether you're applying canons of construction under federal law or state law. We think the answer has to come out the same. And so you could, since you're deciding the issue on the one, you could decide it on the other. But, of course, you don't have to address that because of the lack of any substantive standards. Just real quickly on the UNRU Act, they're required, CNN makes it clear, they're required to plead intentional discrimination. This court, you know, quoting a prior case, made clear that UNRU, the UNRU Act, does not extend to practices and policies that apply equally to all persons. That's what's at issue here. The last point I would make has to do with their reliance on the Specter case, the cruise ship case, not cited previously in this case. As the fates would have it, I argued that case in the Supreme Court of the United States. And... You have some familiarity. I am familiar with it. The issue in that case was not about whether ships are places. Of course ships are places. The issue in that case is whether a foreign flagged cruise ship could be in the United States. It was purely a question of the extraterritorial application of the ADA, not the underlying question. If Your Honors have questions, I'm happy to address it. Otherwise, I'll yield my time. Thank you. Thank you very much. Your Honors, if I may address two of the specific questions posed by the panel. First, regarding where in the lower court briefing appellant argued regarding the DPA and policy violations. And I would point to docket number 68 in the trial court, pages four through seven, and specifically page five, which refers to its application to websites and non-physical locations. And by necessity, if there's no physical location at issue, then we're not necessarily talking about a policy issue, because there are no structural access impediments at issue in that matter. The other question posed by the panel. Do you make the argument on that page that, are you just saying it implied that it's a policy and then by implication a policy must have been what you were basing it on, and then you were saying that must have been enough? Or is there actually an argument that a policy is enough to support a DPA claim? The argument was that the DPA is a freestanding statute in this circumstance, and that necessarily this is a policy circumstance. Did it say that necessarily this is a policy circumstance and that's enough? I don't think those words were written. The second question posed by the panel that I promised to come back with upon rebuttal was where in the Department of Justice statement of interest it referred to the CFR. And in that statement of interest, which is docket number 45 in the Department of Justice, referred to on page 7, for example, 28 CFR section 36.104. And in later pages. And said what about it, though? Said we interpret that regulation at that point as meaning something? Yes. The Department of Justice at that point argued that web-only service falls within the enumerated categories of public accommodations and referred to 28 CFR section 36.104 in support. Thank you. Thank both counsel for your argument. This morning the case of Earl v. eBay is submitted. We'll now hear argument in Cullen v. Netflix.
judges: McKeown, Murguia, Friedland